1 CAROLYN A. DYE (BAR NO. 97527)
LAW Office of Carolyn A. Dye
2 15030 Ventura Blvd., Suite 527
Sherman Oaks, CA 91403
3 Telephone: 818/287-7003
Facsimile: 323/987-5763
4 Email: trustee@cadye.com

5 General Bankruptcy Counsel

6

UNITED STATES BANKRUPTCY COURT
7
CENTRAL DISTRICT OF CALIFORNIA
8
LOS ANGELES DIVISION
9

| | |
|---|---|
| 10  In re | ) Lead Case No. 2:24-bk-11384-VZ |
| | )          [Chapter 11] |
| 11  AAA ABC ACQUISITION, LLC, | ) |
| | ) [Jointly Administered With: |
| 12           Debtor in Possession. | ) Case No. 2:24-bk-11385-VZ and |
| | ) Case No. 2:24-bk-11386-VZ] |
| 13 _____ | ) |
| 14  In re | ) Adv. Case No. 2:24-ap-01558-VZ |
| | ) |
| 15  ABRAMS ARTISTS AGENCY, LLC, | ) PROOF OF SERVICE OF SUMMONS |
| | ) SERVICE EXECUTED RE: SERVICE OF |
| 16           Debtor. | ) COMPLAINT FOR: (1) RECOVERY OF |
| _____ | ) PREFERENTIAL PAYMENTS (TO |
| 17  In re | ) INSIDERS) PURSUANT TO 11 U.S.C. |
| | ) SECTION 547(b)4); (2) BREACH OF |
| 18  A3 ARTISTS AGENCY, LLC | ) FIDUCIARY DUTY; (3) AVOIDANCE OF |
| | ) CONSTRUCTIVE FRAUDULENT TRANSFER; |
| 19           Debtor. | ) CIVIL CASE COVER SHEET; SUMMONS |
| | ) AND NOTICE OF STATUS CONFERENCE |
| 20 _____ | ) IN ADVERSARY PROCEEDING [LBR |
| AAA ABC ACQUISITION, LLC, ABRAMS | ) 7004-1] |
| 21  ARTISTS AGENCY, LLC AND A3 | ) |
| ARTISTS AGENCY, LLC, | ) |
| 22 | ) |
| | ) |
| 23            Plaintiff, | ) |
| | ) |
| 24  v. | ) |
| | ) |
| 25  BRIAN CHO, an individual, and | ) |
| ROBERT ATTERMAN, an individual | ) |
| 26 | ) |
| | ) |
| 27            Defendant, | ) |
| _____ | ) |
| 28 | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 15030 Ventura Boulevard, Suite 527, Sherman Oaks, California 91403.

A true and correct copy of the foregoing document entitled Proof of Service of Summons Service Executed Re: Service of Complaint For: (1) Recovery of Preferential Payments (To Insiders) Pursuant to 11 U.s.c. Section 547(b)4); (2) Breach of Fiduciary Duty; (3) Avoidance of Constructive Fraudulent Transfer; Civil Case Cover Sheet; Summons and Notice of Status Conference in Adversary Proceeding [Lbr 7004-1] will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.     TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 27, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Carolyn A Dye                              trustee@cadye.com
Kelly L Morrison                           kelly.l.morrison@usdoj.gov, dare.law@usdoj.gov,
                                                     noreen.madoyan@usdoj.gov,david.s.shevitz@usdoj.gov
United States Trustee (LA)            ustpregion16.la.ecf@usdoj.gov

☐    Service information continued on attached page

**2.     SERVED BY UNITED STATES MAIL:** On June 27, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Brian Cho                                      Robert Atterman
1450 23rd Street                            300 E. 56th Street
Manhattan Beach, CA 90266        Apartment 23G
                                                     New York, NY 10022

☐    Service information continued on attached page

**3.     SERVED BY PERSONAL DELIVERY:**  Pursuant to Fed.R.Civ.P. 5 and/or controlling LBR, on June 27, 2024, I arranged for service on the following person as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Brian Cho
1450 23rd Street
Manhattan Beach, CA 90266

Matthew A. Lesnick                      matt@lesnickprince.com

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 27, 2024                     /s/ Karissa De La Trinidad
                                                     Karissa De La Trinidad

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                **F 9013-3.1. PROOF OF SERVICE**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Carolyn A Dye<br>Law Office of Carolyn A. Dye<br>15030 Ventura Boulevard<br>Suite 527<br>Sherman Oaks, CA 91403<br><br>818–287–7003<br><br><br><br><br><br>_Plaintiff or Attorney for Plaintiff_ | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| In re:<br><br><br>AAA ABC Acquisition, LLC<br><br><br><br>Debtor(s). | CASE NO.:  2:24–bk–11384–VZ<br><br>CHAPTER:  11<br><br>ADVERSARY NUMBER: 2:24–ap–01158–VZ |
|---|---|
| AAA ABC Acquisition LLC<br><br>**(See Attachment A for names of additional plaintiffs)**<br><br>Plaintiff(s)<br><br>Versus<br><br>Brian Cho<br><br>**(See Attachment A for names of additional defendants)**<br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left–hand corner of this page. The deadline to file and serve a written response is **07/25/2024.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Date: | **September 12, 2024** |
|---|---|
| Time: | **10:30 AM** |
| Hearing Judge: | **Vincent P. Zurzolo** |
| Location: | **255 E Temple St., Crtrm 1368, Los Angeles, CA 90012** |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: June 25, 2024

By: _____"s/" Shemainee Carranza_____

Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                    Page 2                    **F 7004–1.SUMMONS.ADV.PROC**

# ATTACHMENT A
## Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| AAA ABC Acquisition LLC<br>Abrams Artists Agency LLC<br>A3 Artists Agency LLC | Brian Cho<br>Robert Atterman |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## ATTACHMENT A

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _____ | _____ | _____ |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                                    **F 7004–1.SUMMONS.ADV.PROC**

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS AAA ABC ACQUISITION, LLC (LEAD CASE) Jointly Administered With: ABRAMS ARTISTS AGENCY, LLC AND A3 RTISTS AGENCY , LLC | DEFENDANTS BRIAN CHO AND ROBERT ATTERMAN |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) CAROLYN A. DYE, 15030 VENTURA BLVD., SUITE 527 SHERMAN OAKS, CA 91403; (818) 987-5763 | **ATTORNEYS** (If Known) |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☐ Other ☐ Trustee | ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☒ Creditor ☐ Other ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Recovery of preferential transfers (Insiders); Breach of fiduciary duty; Avoidance of contructive fraudulent transfers; Avoidance of actual fraudulent transfer.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property – §542 turnover of property
☒ 12-Recovery of money/property – §547 preference
☒ 13-Recovery of money/property – §548 fraudulent transfer
☐ 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $1.8 million & $ 45 million |

**Other Relief Sought**

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR AAA ABC ACQUISITION, LLC, ABRAMS ARTISTS AGENCY, LLC, A3 ARTISTS AGENCYC, LLC | BANKRUPTCY CASE NO. 2:24-bk-11384-VZ ; Jointly Administered With: 2:24-BK-11385-VZ & 2:24-bk-11386-VZ | |
| DISTRICT IN WHICH CASE IS PENDING CENTRAL DISTRICT - LOS ANGELES | DIVISION OFFICE LOS ANGELES | NAME OF JUDGE VINCENT P. ZURZOLO |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) *Carolyn Dye* | | |
| DATE 6/21/24 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) CAROLYN A. DYE | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1 | CAROLYN A. DYE (BAR NO. 97527)
LAW Office of Carolyn A. Dye
2 | 15030 Ventura Blvd., Suite 527
Sherman Oaks, CA 91403
3 | Telephone: 818/287-7003
Facsimile: 323/987-5763
4 | Email: trustee@cadye.com

5 | General Bankruptcy Counsel

6

          UNITED STATES BANKRUPTCY COURT

7

          CENTRAL DISTRICT OF CALIFORNIA

8

             LOS ANGELES DIVISION

9

10 | In re                          ) Lead Case No. 2:24-bk-11384-VZ
                                     )      [Chapter 11]
11 | AAA ABC ACQUISITION, LLC,       )
                                     ) [Jointly Administered With:
12 |           Debtor in Possession. ) Case No. 2:24-bk-11385-VZ and
                                     ) Case No. 2:24-bk-11386-VZ]
13 | _____ )
                                     )
14 | In re                          ) Adv. Case No.
                                     )
15 | ABRAMS ARTISTS AGENCY, LLC,     ) COMPLAINT FOR:
                                     ) (1) RECOVERY OF PREFERENTIAL
                                     )     PAYMENTS (TO INSIDERS)
16 |                       Debtor.   )     PURSUANT TO 11 U.S.C. SECTION
                                     )     547(b)4);
17 | _____ ) (2) BREACH OF FIDUCIARY DUTY;
    In re                           ) (3) AVOIDANCE OF CONSTRUCTIVE
18 | A3 ARTISTS AGENCY, LLC          ) FRAUDULENT TRANSFER (11 U.S.C.
                                     ) Section 544(B) and Cal. Civ code
19 |                       Debtor.   ) sections 3439.05 and 3439.07-09);
                                     ) (4) AVOIDANCE OF ACTUAL
20 | _____ ) FRAUDULENT TRANSFER (11 U.S.C.
    AAA ABC ACQUISITION, LLC, ABRAMS ) SECTION 544(B) AND CAL. Civ.
21 | ARTISTS AGENCY, LLC AND A3      ) Code Section3439.04(a)1 and
    ARTISTS AGENCY, LLC,            ) 3439.07-09)
22 |                                 )
                          Plaintiff, )
23 |                                 )
    v.                              )
24 |                                 )
    BRIAN CHO, an individual, and    )
25 | ROBERT ATTERMAN, an individual  )
                                     )
26 |                       Defendant, )
                                     )
27 | _____ )

28

Plaintiff's AAA ABC Acquisition, LLC, Abrams Artists Agency, LLC and A3 Artists Agency, LLC (or collectively, "Plaintiffs") hereby alleges the following against Defendants Brian Cho ("Cho") and Robert Atterman ("Atterman") (Cho and Atterman are collectively referred to as "Defendants").

### JURISDICTION/VENUE/PARTIES

1.    This adversary proceeding arises in and relates to the jointly administered Chapter 11 cases of AAA ACC Acquisition, LLC ("AAA") Case No. 2:24-bk-11384-VZ, Abrams Artists Agency, LLC ("Abrams"), Case No. 2:24-bk-11385-VZ and A3 Artists Agency, LLC ("A3"), Case No. 2:24-bk-11386-VZ, which are presently pending before the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

2.    The venue is proper in this district pursuant to 23 U.S.C. § 1409.

3.    This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H) and (O). This Court can and should enter a final judgment herein. If and to the extent that the claims asserted in any of these causes of action are not determined to be "core" matters, they are "related to" core matters and are appropriate for adjudication by this Court.

4.    AAA filed a Chapter 11 case on February 25, 2024, and is presently operating as the Debtor in Possession.

5.    Abrams filed a Chapter 7 case on February 25, 2024, its case was converted to one under Chapter 11 by Order entered on 05/13/24 (Docket No. 82) and it is presently operating as the Debtor in Possession.

///

6.   A3 filed a Chapter 7 case on February 25, 2024, its case
was converted to one under Chapter 11 by Order entered on 05/13/24
(Docket No. 82) and it is presently operating as the Debtor in
Possession.

7.   AAA is the owner of all the membership interests in
Abrams and A3. The cases are being jointly administered pursuant to
the Order entered on May 14, 2024, (Docket No. 101).

8.   Brian Cho ("Cho") is an individual over the age of
eighteen who at all times relevant herein has resided in Manhattan
Beach, California. At all times relevant herein Cho served as the
President of A3. A3 is a California based company with its
principal place of business located in Los Angeles, California.

9.   Robert Atterman ("Atterman") is an individual over the
age of eighteen who at all times relevant herein served as the
Chief Executive Officer ("CEO") of Abrams, and is believed to be a
resident of New York state. Abrams is a New York limited liability
company registered to do business in California.

10.   Adam Bold ("Bold") is an individual over the age of
eighteen who at all times relevant herein has resided in Los
Angeles County, California. Bold is the owner of all the membership
interests in Superbrands Capital, LLC ("Superbrands"), a California
limited liability company.

11.   Superbrands is the majority owner of the membership
interests in Abrams and A3, with Cho and Atterman owning a
percentage interest in AAA, but having made no equity (cash)
investment in AAA.

12.   Plaintiff is informed and believes, and upon such
information and belief alleges, that the acts forming the basis of

-3-

the actions herein were performed in or affected the business and assets of the Plaintiffs in the County of Los Angeles, California, and within the judicial district in which these actions are brought.

**FACTUAL BACKGROUND RELATING TO PREFERENCES**

13.   Prior to Plaintiff filing for Bankruptcy on February 25, 2024, pursuant to the Operating Agreement of AAA  and amendments thereto, Bold served as that company's chairman. After the termination of Cho as an employee/officer of A3, and his subsequent resignation from the Board, Bold became the sole remaining member of the Board of AAA.  At all times relevant to the claims for relief stated in this complaint,  Bold had no day to day operating responsibilities for A3 or Abrams.

14.   At the time of formation of AAA and until they resigned both Atterman and Cho were members of the three person Board of AAA.

15.   Atterman was removed from the Board on or about May 11,2023 and was terminated from his employment with Abrams on or about February 12, 2024.

16.   Cho was terminated from his position with A3 and resigned from the Board on or about March 13, 2024, approximately 30 days after February 1, 2024, at the same time as substantially all of the remaining employees of the companies were terminated.

17.   Atterman and Cho were "Insiders" of AAA, Abrams and A3, as that term is defined in 11 U.S.C. Section 101(31) (B) and were in charge of directing and approving the payment by Abrams and A3, respectively, of their own compensation and bonuses.

-4-

18. While fully aware of the financial circumstances and condition of the businesses, meaning being insolvent and incapable of paying their debts as they came due (including salary and payroll to themselves), without advances from Superbrands, in the year prior to February 25, 2024, Atterman directed and approved the payment to himself of $634,788.75, comprised of wages and bonuses. He also received reimbursement of no less than $29,882.44 for expenses he claimed were reimbursements.

19. While fully aware of the financial circumstances and condition of the businesses, meaning being insolvent and incapable of paying their debts as they came due (including salary and payroll to themselves) without advances from Superbrands, in the year prior to February 25, 2024, Cho directed and approved the payment to himself of $826.567.41, comprised of wages and bonuses. In the 90 days before the petition date, Cho received no less than $125,798.12 of wages. He also received no less than $26,806.72 for expenses he claimed were reimbursements.

**FACTUAL BACKGROUND RELATING TO BREACH OF FIDUCIARY DUTY** AND **INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**

20. Abrams and A3 are talent agencies. They engaged various talent agents who had, in turn, contracts with "talent" meaning entertainment and actors and performers. Talent Agents are paid for performances by their clients, and, in turn, remit to the talent their portion of the payments due to them. Abrams and A3 collected the fees paid for performances, managed the remittances for the agents and, in the interim, paid the agents a salary based on the expected revenues to be generated by their contracts. At the time that Bold considered investing in this type of business, he was

considering the investment on a purely metric basis believing that there was unrealized value and opportunity in the talent agency businesses but knew nothing about the talent agency business in terms of how it operated day to day. He relied on the experience and expertise of Atterman and Cho to decide to make an investment in AAA through his company, Superbrands.  Although on the Board of AAA, Bold relied on the efforts of Atterman and Cho to manage the day to day affairs, including setting salaries for themselves and for of agents and other employees of Abrams and A3.

21.    During the challenging times of the COVID-19 pandemic and later the writers' and actors' strikes of 2023 (the "Strikes") and continuing through the petition dates, Superbrands advanced certain sums to AAA to enable the business enterprise to continue operations. Atterman and Cho, as the chief executive officers of those companies used those funds to pay the operating deficits of Abrams and A3, including but not limited to the payment of salaries of Atterman and Cho.

22.    AAA was formed in 2018. When the members of AAA ( i.e., Superbrands, Cho and Atterman) formed AAA, and then that entity purchased Abrams and A3, Abrams and A3 were they were barely profitable, operating using outdated models and without any significant talent pool. With the knowledge and consent of Atterman and Cho, Superbrands subsequently loaned millions of dollars into AAA, which was used, through Abrams and A3, to upgrade systems and attract high level agents and clientele. This injection of funds revitalized the companies, significantly improving their image and revenue streams. At no point in time since AAA's inception, however, were Abrams or A3 ever profitable. Having survived the

COVID restrictions, the business was beginning to recover in 2023 and the projections suggested that the business was due to start making profits as early as late 2023 or early 2024.

23.   Unfortunately, the subsequent industry Strikes caused Abrams' and A3's revenues to plummet overnight, losing within forty-eight hours nearly ninety percent of their revenue while operating expenses virtually remained the same.

24.   In an effort to avoid bankruptcy during the Strikes and to hold onto the agents (and their talent revenues), Superbrands loaned additional funds every week to ensure that employees would continue to get paid without significant payroll disruptions.

25.   Due to the circumstances, and as a compromise to keep the business alive, the employees making six figures annually took a 30% temporary pay cut, with a hard floor of $100,000.

26.   In stark contrast to Superbrands efforts and the sacrifices of the employees who took pay cuts, Cho and Atterman serving as President and CEO, respectively, not only did not invest any personal funds into the business but also demanded and paid themselves salary increases.   At no point in time during the Strikes or thereafter did Cho or Atterman voluntarily take any pay cut.   In contrast, since Superbrands purchased its interest in AAA, Bold, individually, never once took a single dollar from the company coffers as any salary, stipend, or revenue share from AAA or either Abrams or A3.

27.   Finally, after nearly 148 days, the Strikes ended, but in light of the amount of funds already advanced by Superbrands, Superbrands decided (in October- November 2023), it would not make any additional advances other than those required to minimally

1  sustain the business until it could be sold.  Bold, acting in his

2  capacity as Chairman of the Board of AAA, proactively reached out

3  to a number of potential buyers and after sorting through the

4  prospects, began to negotiate a tentative agreement with The Gersh

5  Agency ("Gersh") to sell certain assets of Abrams and A3 (the

6  "Gersh Deal"). This strategic decision was made to preserve the

7  value of the business, pay creditors, including Superbrands,  and

8  to avoid the need for continuing loans to operate any retained

9  assets.

10      28.   Throughout the negotiation process of the Gersh Deal,

11  neither Atterman or Cho were involved in the negotiations, but were

12  were fully informed (by email, text messages and other

13  communications) and consistently expressed their approval for the

14  proposed deal, no doubt motivated by the prospect that if the Gersh

15  Deal closed, the proceeds would be sufficient to allow them to

16  receive a distribution on their equity ownership after all

17  creditors were paid. At the time neither were actually performing

18  any services, but in the case of Cho was still receiving salary.

19      29.   Initially, through his business acumen and leadership

20  skills, Bold managed to negotiate a proposal with Gersh to sell for

21  $60 million for the sale of a portion of Abrams and A3's assets.

22  Gersh, however, was concerned about the perceived disputes among

23  the members of AAA and about the risk that it  would somehow be

24  found liable for the lease with ESRT Empire State Building, LLC

25  ("ESRT"), a liability it had no interest in assuming. Further, they

26  required the consent of Atterman and Cho, again to avoid any

27  prospect of liability to them, understanding that Bold was then

28  acting for the AAA Board in the negotiations. Cho and Atterman's

approval should have been a formality since both had approved the
transaction in principle.

30. Ultimately to finalize the transaction, Gersh indicated
that it was unwilling to undertake the obligations of the lease
with ESRT unless Bold personally guaranteed that lease obligation.
Not being a signer personally or a guarantor of that lease, Bold
was naturally unwilling to meet that demand but to complete the
transaction he attempted to negotiate a settlement with ESRT to
cancel the lease and reached a tentative agreement.  Instead of
working through and with Bold, at a time when he had no official
role as an officer or member of the AAA Board, Atterman
unilaterally contacted ESRT and told them AAA "had" to sign the
deal with Gersh "as soon as possible" and if ESRT did not agree to
the settlement on the lease, the deal with Gersh would be
cancelled.

31. ESRT immediately realized this communication gave them
leverage, and rejected the settlement offered by Bold and instead
of $3M plus, raised their demand to $10,000,000. Bold refused to
concede to that demand, and as a result of not having any
settlement in hand, Attermana n Cho not having formally agreed to
the terms and Bold being unwilling to personally guarantee the
lease, Gersh withdrew its $60,000,000 offer.

32. When this development was communicated to Cho and
Atterman, they immediately said they would formally approve the
Gersh Deal, and sign off on the transaction but by then it was too
late because of the ESRT demand.

33. AAA and its businesses were materially and adversely
affected by the Gersh withdrawal.

-9-

34.   Shockingly, in a sudden reversal, without provocation and spurred by expectations that they could obtain money from Bold, personally, i.e., greed, Cho and Atterman, hired an attorney to pursue claims against Bold, A3, and several associated entities and threatened to file a complaint in the California Superior Court. Cho and Atterman, both personally and through their lawyers, demanded more money than what was originally agreed upon in exchange for their signatures on the Gersh deal in a quid-pro-quo like exchange in order to not bring their lawsuit. Bold did not acquiesce to Cho and Atterman's bully tactics, especially since the Gersh transaction had been withdrawn because of the unresolved ESRT lease.

35.   Attempting to increase the pressure on Bold and with its attendant adverse effect on the companies, Cho and Atterman then initiated a hostile and public campaign against Bold, publicizing salacious, harmful, inflammatory and, most importantly, false information to news outlets including the Los Angeles Times, Variety, The Hollywood Reporter, Business Wire, and Deadline to name a few.

36.   This hostile media blitz was characterized by severe and unfounded accusations directly accusing BOLD based on unfounded and unverified gossip relating to his capabilities as a father and his alleged drug use, which was intended to discredit Bold's reputation and leadership both at AAA, and more broadly, in his other professional sectors.

37.   Utilizing the media as accelerant to fan the flames of their false and defamatory lies, Atterman and Cho  accused Bold of being a "sleaze bag," a "drug addict," a "liar," and unjustly

-10-

compared him to the now infamous Harvey Weinstein-allegations that were not only damaging but entirely without merit, false and without any factual basis.

38.    As a direct and fully anticipated result of Cho and Atterman's public comments to the media and press, Gersh indicated its reluctance to do business with Bold, concerned about the adverse publicity it could incur if they proceeded. Bold continued to attempt to reach a deal with Gersh and, which in response, adjusted its position several times on the previously negotiated deal, materially lowering their offer by millions of dollars, eventually reaching a tentative figure of roughly $15 million, a staggering $45 million less than their initially agreed upon contract figure in large part due to the salacious, unfounded, false, personal and defamatory comments about BOLD, and by association, A3.

39.    This allegations made in the state court action were totally unfounded as that is demonstrated by the fact that throughout BOLD's tenure at AAA, Cho and Atterman were present in one role or another and never once did they accuse him of engaging in a sexually inappropriate manner with any of the employees or peers. Had Cho and Atterman been aware of any sexual misconduct or any of the acts alleged in their complaint, they had a duty to notify the appropriate individuals at AAA and A3, including, but not limited to, Human Resources. Yet they never did. The fact that, according to them, they alleged they knew of Bold's inappropriate behaviors and yet did nothing further underscores and discredits the spurious nature of their attacks against Bold.

40.    Although the public statements were crafted and released

-11-

with the intent to inflict financial harm and personal embarrassment upon Bold, thus tarnishing his professional and personal reputation across a broad audience, it had the additional effect of creating a material change in position in Gersh Agency, thereby reducing the consideration they were willing to pay to and for the assets. Ultimately a transaction for only a portion of the assets was able to be negotiated, for $15,000,000 rather than the $60,000,000 previous price.

### FIRST CAUSE OF ACTION

### (Against Atterman and Cho for Recovery of Insider Payments)

41. Plaintiff realleges and incorporates herein by this reference each and every allegation contained in the proceeding paragraphs hereof.

42. Atterman received $634,788.75 of wages and bonuses within the one year before the petition date and did not provide any services that justified such payments. Atterman caused Abrams to pay him $29,882.44 for expenses he allegedly incurred for which there is no business justification. 37. Cho received $826,567.41 within the one year before the petition date and did not provide any services that justified such payments. Cho caused A3 to pay him $ 26,806.72  for expenses he allegedly incurred for which there was no business justification.

43. Cho received $125,798.12  within the 90 days prior to the bankruptcy petition dates.

44. All such payments were made to them at a time when they were in control of the disbursements of the Abrams and A3.

45. The payments were made to them at a time when the

-12-

1  companies were insolvent and paid at times when they were not

2  providing any services equivalent to the amount they received.

3     46.  All such payments are transfers of property of the

4  Plaintiffs' estates and are recoverable pursuant to 11 U.S.C

5  547(b)(A) and (B).

6     47.  All such payments enabled Atterman and Cho to receive

7  more than if the transfers had not been made if the cases were ones

8  under Chapter 7.

9     48.  The funds transferred to Atterman and Cho (hereafter

10  "Transfers") are avoidable under 11 U.S.C. Section 547(b).

11              **SECOND CAUSE OF ACTION**

12              **(Breach of Fiduciary Duty)**

13     49.  Plaintiff re-alleges and incorporates herein by this

14  reference each and every allegation contained in the preceding

15  paragraphs hereof.

16     50.  As officers and members of the Board of AAA, Atterman

17  and Cho had a fiduciary duty of good faith, loyalty and care to

18  AAA, Abrams and A3. As members of the Board of AAA and officers of

19  Abrams and A3, they were responsible to ensure appropriate internal

20  controls were in place, and to undertake appropriate risk

21  mitigation and compliance with applicable laws was done.

22     51.  Instead of acquitting these duties faithfully, Atterman

23  and Cho breached these duties by:

24     i)  draining money out of the companies in payment of their

25  salaries and bonuses which were excessive and unreasonable given

26  the financial condition of the companies;.

27     ii) Atterman's' unilateral and unauthorized contact with

28  ESRT, when he was no longer an officer of member of the Board of

1 the AAA,  and conveying to them inaccurate information concerning

2 deadlines with Gersh, resulting in ESSRT increasing its demand for

3 damages for the lease termination and the failure of the Gersh

4 Deal;

5   iii) and filing the complaint in the state court and thus

6 interfering with the negotiations that were still then ongoing with

7 Gersh; and

8   iv) circulating false and misleading allegations without any

9 proof of misconduct  on the part of Bold.

10  52. Had the ESRT $10,000,000 demand been agreed to, that

11 would have substantially decreased the amount available for other

12 creditors.

13  53. The actions taken by Atterman and Cho in relation to

14 the negotiated Gersh Deal resulted in it not being possible to

15 conclude and the transaction that was later approved was by far

16 less than what could have been closed had Atterman and Cho not

17 intervened in the negotiations.

18  54. Atterman and Cho subsequently further increased the

19 damage to the companies' value by defaming and disseminating false

20 and misleading statements about Bold, all the while knowing that

21 those allegations were false and misrepresented the acts and

22 character of Bold.  Such conduct resulted in a further change in

23 the Gersh posture and ultimately only being able to conclude a

24 $15,000,000 transaction for a portion of the business assets.

25      **THIRD CLAIM FOR RELIEF**

26 **(AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFER UNDER 11 U.S.C.**

27 **SECTION 544(B) AND Cal. Civ. Code Sections 3439.04(a) and 3439.07-**

28 **09)**

55. Plaintiff re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs hereof.

56. Within the year prior to the Petition Date, the Defendants caused the Transfers to be made without the Plaintiff receiving any reasonably equivalent value in exchange.

57.   While the Defendants were in control of the businesses, the Defendants intended for the businesses to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they came due at the time of the Transfers.

58.   Plaintiff is informed and believes that the Defendants did not take possession of the Transfers in good faith and for reasonably equivalent value, and took possession of the Transfers with knowledge of the avoidability of such Transfers. Therefore the Transfers are avoidable under Section 544(b) and Cal.Civ. Code Sections 3439.04(a)(2)(A) and 3439.07-09.

**FOURTH CLAIM FOR RELIEF**

**(Avoidance of Actual fraudulent transfer under 11 U.S.C. Section 544(b) and Cal. Civ. Code Sections 3439.04(a)1 and 3439.07-09)**

59.   Plaintiff re-alleges and incorporates herein by this reference each and every allegation contained in the preceding paragraphs hereof.

60.   Within the one year period Defendants caused the Transfers to be made to themselves with the actual intent to hinder, delay or defraud the Plaintiff's creditors.

61.   Plaintiff is informed and believes that the Defendants did not take possession of the Transfers in good faith and for reasonably equivalent value, and took possession thereof with the

-15-

1 | knowledge of the avoidability of such Transfers. Therefore the
2 | Transfers are avoidable under Section 544(b) and Cal. Civ. Code
3 | Sections 3439.04(a)(21) and 3439.07-09.

4 |

5 | **PRAYER FOR RELIEF**

6 | **WHEREFORE**, Plaintiff prays for judgment as follows:

7 | **ON THE FIRST CLAIM FOR RELIEF**

8 | 1.   For a Judgment avoiding the Transfers to Atterman and
9 | Cho and recovering $853,374.13 from Atterman and $664,671.19
10 | from Cho, plus interest thereon for the benefit of the estate;

11 | **ON THE SECOND CLAIM FOR RELIEF**

12 | 2.   For a judgment finding Atterman and Cho liable for
13 | Breach of Fiduciary Duty and recovering from them a judgment in
14 | an amount no less than $45,000,000; lost earnings in an amount
15 | according to proof  with interest thereon; punitive damages and
16 | exemplary damages according to proof;

17 | **ON THE THIRD CLAIM FOR RELIEF**

18 | 3.   For a judgment avoiding the Transfers and recovering
19 | the Transfers plus interest for the benefit of the estate;

20 | **ON THE FOURTH CLAIM FOR RELIEF**

21 | 4.   For a judgment avoiding the Transfers and recovering
22 | the Transfers plus interest for the benefit of the estate;

23 | ON ALL CLAIMS FOR RELIEF, for all such other and further
24 | relief that the court may deem just and proper.

25 | LAW OFFICE OF CAROLYN A. DYE

26 | Dated June 21, 2024

27 | Carolyn A. Dye

28 |

-16-